Evelyn B. TOPPS, Appellant,

v.

CITY OF COUNTRY CLUB HILLS,
Missouri, Respondent.

No. ED 89356.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 25, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 25, 2007.

Donald K. Murano, The Murano Law Firm, LLC, St. Louis, MO, for appellant.

Priscilla Gunn, Rabbitt, Pitzer & Snodgrass, P.C., St. Louis, MO, for respondent.

KENNETH M. ROMINES, Judge.

### Introduction

Evelyn B. Topps (Topps) appeals from the Judgment of the Circuit Court of St. Louis County, the Honorable John A. Ross presiding, after the Judge granted a motion for summary judgment in favor of respondent, City of Country Club Hills (Country Club Hills), based on the theory of sovereign immunity. We reverse.

### Standard of Review

The standard of review on appeal regarding summary judgment is de novo. *City of Hazelwood v. Peterson,* 48 S.W.3d 36, 38 (Mo. banc 2001). Summary judgment will be upheld on appeal only if this court finds that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.* This court must view the record in the light most favorable to the party against whom summary judgment was entered. *Id.*

### Factual and Procedural Background

The facts viewed in the light most favorable to Topps are as follows. Topps sued Country Club Hills for retaliation and wrongful discharge after alleged inappropriate and unethical business practices and violations of policies and procedures by

Country Club Hills officials. On 15 December 2006, Country Club Hills filed its motion for summary judgment, which the trial court granted on 22 March 2007. In its "Final Judgment and Order" the court found that Topps' action was a whistle blower case, and that Country Club Hills was entitled to sovereign immunity pursuant to section 537.600 RSMo. The Court further found that Country Club Hills did not waive sovereign immunity through its purchase of a MOPERM (Missouri Public Entity Risk Management Fund) insurance policy. Topps appeals the trial court's grant of summary judgment to this Court.

Evelyn Topps is a seventy-year-old woman who was employed by the City of Country Club Hills from 29 May 2001, through 29 March 2004. Topps alleges to have experienced retaliation by Country Club Hills for uncovering and reporting certain unethical behavior by Country Club Hills.[1]

As a result of her actions, Country Club Hills allegedly retaliated against Topps by subjecting her to undue, open criticism and scrutiny, and depriving her of benefits that were freely given to less senior employees. Topps further alleges that she was subjected to false claims of sexual harassment, vulgar language by the Chief of Police, and threatening and disturbing communications by the City Attorney and a certain Alderperson. Due to these actions and alleged threats of investigations and termination, Topps decided that she had no other option than to resign her position with the City of Country Club Hills. She did so on 29 March 2004.

Topps filed her original petition against Country Club Hills on 10 June 2005. Country Club Hills filed a motion for summary judgment on 3 July 2006, which did not raise the sovereign immunity issue that is presently before this Court. The trial court granted Topps' motion to strike Country Club Hills's motion for summary judgment, finding that it was untimely filed. Country Club Hills subsequently filed a second motion for summary judgment on 15 December 2006, which argued for summary judgment based on a sovereign immunity claim. Specifically, the motion claimed that Country Club was entitled to sovereign immunity from Topps' whistle blower claim as a matter of law pursuant to RSMo. section 537.600 and the ruling in *Kunzie v. City of Olivette*, 184 S.W.3d 570 (Mo. banc 2006). The trial judge granted Country Club Hills' second motion for summary judgment on 22 March 2007, holding that "... this is a whistle blower case, and defendant is entitled to sovereign immunity pursuant to section 537.600. Defendant did not waive sovereign immunity through its purchase of a MOPERM policy."

Between 1 January 2001 and the present, the City of Country Club Hills purchased insurance through MOPERM. MOPERM produced "Declaration Pages," which noted there is "Employment Practices Liability" (EPL) coverage which has a $10,000 deductible and limits of $2,000,000 per occurrence. From 1 January 2001, through 1 January 2002, Country Club Hills maintained General Liability Coverage which included EPL coverage. On 1 January 2002, EPL was added as a

---

1. This unethical behavior included financial inconsistencies, violations of city policies and administrative procedures, violations of good and ethical business practices, violations of the "Code of Ethics" requirements (as issued by the Missouri Local Government Program, College of Humanity and Public Affairs, Southwest Missouri State University), abuse of overtime, mishandling of public monies, violations of Country Club Hills' insurer's "MOPERM" Risk management Insurance certification requirements, and violations of Missouri Statutes and the Missouri Constitution.

separate rider with a $1,000 deductible. On 1 January 2003, the EPL deductible was raised to $10,000. While EPL is listed under "Coverage" on the Declarations Page of the Memorandum of Coverage, EPL is not defined in the Memorandum of Coverage. During oral argument, Country Club Hills' attorney admitted that MOPERM's coverage is "broad." In the approximately four pages of "Exclusions" in the Memorandum of Coverage, nowhere is the term "whistle blower" found among the lists of exclusions from coverage. Neither do the words "whistle blower" or "sovereign immunity" appear at all in MOPERM's Memorandum of Coverage.

### Discussion

■ Topps argues that the trial court erred in granting summary judgment for Country Club Hills in that there is a genuine issue of material fact in dispute, specifically, whether MOPERM covers Topps' whistle blower claim. Topps argues that Country Club Hills' purchase of MOPERM insurance waived sovereign immunity as to Topps' whistle blower claim. Accordingly, Topps contends that the trial court should not have granted summary judgment and this case should be remanded for further trial proceedings. Country Club Hills argues that the evidence is clear that the MOPERM policy does not cover Topps' whistle blower claim, thus there is no genuine issue of material fact and the trial court's granting of summary judgment should be affirmed. For the reasons stated below, we disagree with Country Club Hills' argument and reverse the trial court's grant of summary judgment.

Both Topps and Country Club Hills agree that this is a whistle blower case. Both parties further agree that, based on the ruling in *Kunzie v. City of Olivette*, the purchase of insurance can waive sovereign immunity.[2] Additionally, both parties agree that whether sovereign immunity is waived or not in the instant case is a matter of contract interpretation of the insurance policy contract between MOPERM and Country Club Hills.

It is clear that if the MOPERM Memorandum of Coverage covers the instant whistle blower claim, then, according to *Kunzie*, sovereign immunity is waived. However, if the MOPERM policy does not cover the current whistle blower claim then sovereign immunity remains intact. Thus the primary charge of this Court is to determine whether or not there is a genuine issue of material fact regarding Country Club Hills' MOPERM insurance coverage of Topps' whistle blower claim.

Both parties substantially rely on the *Kunzie* case. In *Kunzie*, Gene Kunzie was an at-will employee of the City of Olivette for 23 years; until his firing in August 2003. At the time of his firing, Kunzie was the Director of Public Works and Building Commissioner. Kunzie filed suit against the city, setting forth three counts, one of which was a whistle blower claim of retaliatory discharge. The city filed a motion to dismiss, asserting, among other things, that Kunzie's petition failed to state a claim upon which relief could be granted because the claims were barred by sovereign immunity. *Kunzie v. City of Olivette*, 184 S.W.3d 570, 571 (Mo. banc 2006).

■ The circuit court sustained the city's motion without explanation. After an opinion by this Court, the Missouri Supreme Court granted transfer and reversed and remanded, holding, in pertinent part, that Kunzie sufficiently alleged

**2.** *Kunzie v. City of Olivette* states, "If the city maintains insurance that covers these types of claims, then it will have waived its immunity under section 537.610 for the specific purpose of and to the extent of its insurance coverage." 184 S.W.3d at 574 (Mo banc 2006).

facts that, if proved, would bring his tort claims within the purview of the statute waiving municipality's sovereign immunity to the maximum amount of its liability insurance coverage. *Id.* at 570. In support of this holding the Supreme Court found that, under the common law, only the State and its entities were entitled to complete sovereign immunity from all tort liability. *Junior College Dist. of St. Louis v. City of St. Louis,* 149 S.W.3d 442, 447 (Mo. banc 2004). Municipal corporations traditionally have had immunity, however, for those actions they undertake as part of the municipality's governmental functions—actions benefiting the general public. *Id.* Municipalities have no immunity for torts while performing proprietary functions—actions benefiting or profiting the municipality in its corporate capacity. *Id.* Personnel decisions and the internal administration of operating a municipal department are governmental. As such, the city is protected by governmental immunity *unless some exception applies.*[3] *Kunzie,* 184 S.W.3d 570, 574 (Mo. banc 2006).

In the *Kunzie* case, the only applicable exception would be the municipality's procurement of liability insurance. *Id.* RSMo. section 537.610.1 allows political subdivisions of the state to purchase liability insurance for tort claims and thereby waives sovereign immunity "only to the maximum amount of and only for the purposes covered by such policy of insurance" or self-insurance plan. *Id.* Kunzie alleged that the city maintained insurance "to handle the consequences of employment related actions brought against them." *Id.* By doing so, according to the court, Kunzie had sufficiently alleged facts that, if proved, would bring his tort claims within the purview of the statute. *Id.* Because the trial court dismissed Kunzie's petition prior to the commencement of discovery,

Kunzie was not able to prove the existence and content of the insurance policy. *Id.* The Supreme Court reversed and remanded, in part, to determine if the city maintained insurance that covered claims like that of Kunzie's. *Id.*

Topps' case appears to be factually similar to *Kunzie.* Not unlike Gene Kunzie, Evelyn Topps is a city employee who filed what the parties describe as a whistle blower claim against her employer. Also similar to Kunzie, Topps has alleged that Country Club Hills maintained insurance which covered "employment practices liability." In *Kunzie* the court reversed and remanded because, in part, it was unclear whether the City of Olivette maintained insurance covering Kunzie's claim. Here, as in *Kunzie,* we find that there is an insufficient factual record regarding coverage such that it cannot be determined as a matter of law that Country Club Hills is due judgment.

The several arguments advanced by the parties need not be discussed as on remand these issues may be resolved.

In accordance with the applicable standard of review and with the decision in *Kunzie,* this court reverses the trial court's grant of summary judgment in favor of Country Club Hills and remands the case for a factual determination as to the effect of the MOPERM policy.

REVERSED AND REMANDED FOR TRIAL.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concur.

---

3. Emphasis added.