**Walter ROTHENHOEFER, Appellant,**

v.

**The CITY OF ST. LOUIS, a Municipal Corporation, Respondent.**

**No. 51833.**

Supreme Court of Missouri, Division No. 2.

Dec. 12, 1966.

Motion for Rehearing or for Transfer to Court En Banc Denied Jan. 9, 1967.

W. W. Sleater, St. Louis, for appellant.

Thomas F. McGuire, City Counselor, James J. Gallagher, Associate City Counselor, St. Louis, for respondent.

BARRETT, Commissioner.

Claiming a value of $40,000 and $25,000 damages for the destruction of his building known as 1907–1909 St. Louis Avenue, Walter Rothenhoefer instituted this com-

mon law tort action against the City of St. Louis. A jury was waived, the trial court made an extensive finding of fact, all in favor of the city, and concluded by entering judgment against the plaintiff Rothenhoefer upon his cause of action and upon the city's counterclaim (the expense of razing plaintiff's building) entered judgment for the city for $1650 and the plaintiff has appealed.

The action arose in these briefly noted circumstances: On September 12, 1961, Mr. Rothenhoefer, a builder who had also been in the wrecking business, purchased the three-story building and lot, approximately 70 by 160 feet, on St. Louis Avenue for $6100.00. Built in the 1890's and once occupied if not owned by the Y.M.C.A., the building was now in "a sort of devastated area," had been vacant for years and was subject to "uncontrolled vandalism." Projecting a future value of $30,000 or more Mr. Rothenhoefer had envisioned using it for a combined church and bomb shelter, a car wash or a hamburger stand, utilizing at most only the first two floors and basement. Originally the building was three stories with a 50 by 60 foot basement, "hewn stone" foundation, brick walls, wooden flooring, "hog chain beams" of heavy timber and a flat roof resting on the wooden trusses. In December 1961, "started in the basement by vandalism," the building was virtually gutted by fire. While conceding that the fire "spread through the entire building, burning all the one-inch lumber, and the roof" Mr. Rothenhoefer nevertheless claimed that the walls were yet "pretty sound," the basement intact, and he proposed a partial razing of the structure and some use of the salvage.

The Building Commissioner of St. Louis inspected the building both before and after the fire and even before the fire found that the building "was in a completely delapidated condition." The supporting timbers from basement to roof were in a "deteriorated, rotted condition" due to exposure to the elements and basement moisture over a period of years. The roof was partially rotted, there were holes in the floors, stairways were broken, and an auditorium and balcony suspended above the second floor by steel rods off the trusses was hanging "in a very hazardous condition." Accordingly in October 1961 and before the fire the city started proceedings to condemn the building. But in December there was "a raging fire," the Building Commissioner of St. Louis was present and he said that 50% "of the interior of the building was consumed by fire," the roof was burned, the balcony destroyed, the beams and trusses charred and the walls were further damaged by heat and water.

Nevertheless, in January 1962 the city issued Mr. Rothenhoefer a permit to raze part of the structure and reduce it to a one-story building. The permit was for 30 days, it was extended and there was some work on the premises. Mr. Rothenhoefer had the north wall "winched down" and fifty loads of rubbish removed, about 40% of it he claimed. But by April 1962 all permits had expired, very little had been accomplished by way of either razing or restoration and the city proceeded at a cost of $1650 to raze the structure.

Upon this appeal Mr. Rothenhoefer contends that there was no proper notice to him and that therefore the city's condemnation proceeding was illegal. (This claim is made despite the fact that on May 18, 1962, he and his present counsel appeared before the Board of Building Appeals, agreed to proceed with the hearing, there was a hearing and on May 18, 1962, a complete finding of fact, conclusions of law and a final decision that the building could only be rendered safe by demolition and removal.) It is said, however, that the appeals board found that its "re-condemnation" order was erroneous, that the city did not appeal that order and so it is urged that plaintiff's property was demolished "without due process." It is said that the work done on the property after October 17, 1961, substantially changed conditions and that therefore a new proceeding was required. Among other matters it is urged

that since the city issued a permit to reduce the building to one story it is estopped to deny that "the foundation and first story were (not) sound." And finally, upon the merits of appellant's claim, it is said that all the testimony indicated that the first floor was sound "and capable of rehabilitation; therefore, in destroying plaintiff's entire building, the City wrecked and destroyed more than was necessary." These arguments are set forth in detail to the end that it may readily appear why this appeal is necessarily disposed of without specific regard to these assignments of error.

 As indicated this is a common law tort action, independent of statute an action for damages for the wrongful destruction of plaintiff's building and for the purposes of this appeal it is assumed, as specifically pleaded, that appellant made a jury case of the city's wrongful destruction of his building. "While property may be destroyed because it is dangerous to the public, a destruction of particular property on this ground without necessity, and where the property is not in fact dangerous, may be at the peril of the municipality." 18 McQuillin, Municipal Corporations, § 53.58, p. 280; Annotation 46 A.L.R. 362; Aronoff v. City of St. Louis, Mo., 327 S.W.2d 171; Moll Co. v. Holstner, 252 Ky. 249, 67 S. W.2d 1. While this was a common law action and as to its essential issues a case that could have been tried by a jury, "a jury having been waived by counsel" the case was submitted to and tried by the court. And as stated the court made a full and complete finding of facts, including among numerous other matters unfavorable to the appellant specifically "the Court finds that *the building* at 1907–1909 St. Louis Avenue *had no value after the fire* of December, 1961, except for possible salvage materials, and the value of salvage materials was not an issue in this case." (Emphasis supplied.) To digress, since the action was in fact to recover the "reasonable value" of the destroyed building, the appeal is not concerned with a mere technical invasion of rights and the right to at least nominal

damages as in Heuer v. John R. Thompson Co., Mo.App., 251 S.W.2d 980; Greenlake Investment Co. v. Swarthout, Mo.App., 161 S.W.2d 697 and Flynt v. Chicago, B. & Q. Ry. Co., 38 Mo.App. 94. Of importance and significance here is that this was a court-tried case, and while it is reviewable in this court "as in suits of an equitable nature," the judgment is not to be "set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Civil Rule 73.01(d), V.A.M.R.; RSMo 1959, § 510.310(4), V.A.M.S.

 In addition to his own testimony Mr. Rothenhoefer had as a witness a realtor who testified that prior to its destruction the building had a value of $25,000. As stated, he paid $6100 for the entire property and in 1963 sold the lot for "a little over $2750.00" and in his federal income tax return claimed a casualty loss of $5,-469.00. In addition to the building commissioner's testimony as to the condition of the building and the necessity for its demolition the city also had as an expert witness a realtor and appraiser. This witness ascribed a value of $3500.00 to the lot and as to the building said that after the fire "it couldn't be put to any use." It was his opinion that the building "is of no value to the land." Thus upon this record and deferring to the trial court's finding of fact insofar as it involves credibility of conflicting testimony it is not possible for this court to confidently make a contrary or different finding as to value and hence damages. 25A C.J.S. Damages § 162(1) b. And as of course, the burden of proof being upon the appellant (22 Am.Jur.2d (Damages) §§ 296, p. 392, 301, p. 401) if his burned out building was of no value when razed he has suffered no loss and is not entitled to recover damages in this particular action. Wise v. Towse, Mo.App., 366 S.W.2d 506; Biscoe v. Kowalski, Mo., 290 S.W.2d 133, 137–138; Carpenter v. City of Versailles, Mo.App., 65 S.W.2d 957; Curtis v. Fruin-Colnon Contracting Co., 363 Mo. 676, 253 S.W.2d 158, 164.

The contractor's bill to the city for razing the building was $1650.00, the building commissioner testified that the charge was reasonable even though the contractor may have once submitted "a bid" of $1250.00. Other than the contractor's former bid there is no evidence that the sum charged was "excessive" or "unreasonable" and of course the court's finding for the city on the counterclaim is supported and this court is in no position to make another or different finding and award.

For the reasons indicated the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.